### BASKIN et al. v. BROWN.
### No. 5861.

United States Court of Appeals
Fourth Circuit.

Argued April 8, 1949.
Decided May 17, 1949.

Robert McC. Figg, Jr., Charleston, S. C. (Eugene S. Blease, Newberry S. C., Sidney S. Tison, Bennettsville, S. C., and George Warren, Hampton, S. C., on the brief), for appellants.

Thurgood Marshall, New York City (Harold R. Boulware, Columbia, S. C., Robert L. Carter and Constance Baker Motley, New York City, on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This appeal presents another chapter in the effort to exclude Negro citizens from any effective participation in elections in South Carolina, where the vote in the Democratic Primary controls, to all practical intents and purposes, the choice in general elections. Prior to the decision in Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110, Negroes were excluded from voting in the Democratic Primary in South Carolina, which was conducted pursuant to state law. Following the decision in that case, which upheld the right of Negroes to vote in primary elections, the Governor of South Carolina convened the Legislature in special session and recommended that all primary laws of the state be repealed, with the avowed purpose of preventing Negroes from participating in the Democratic primaries. Pursuant to this recommendation the primary laws were repealed and the Democratic primaries were conducted thereafter under rules prescribed by the Democratic Party of South Carolina but in the same manner and in such way as to produce the same results as when conducted under state law. In Elmore v. Rice, D.C., 72 F.Supp. 516, those conducting these primary elections were enjoined from denying to Negro citizens the right to vote therein; and this was affirmed by us on appeal in Rice v. Elmore, 4 Cir., 165 F.2d 387, where we gave the most careful consideration to the questions involved. Certiorari to review our decision was denied by the Supreme Court. 333 U.S. 875, 68 S.Ct. 905.

Following the denial of certiorari in Rice v. Elmore, the Democratic Party of South Carolina adopted rules under which control of the primaries in that state was vested in clubs to which Negroes were not admitted to membership, and voting in the primaries was conditioned upon the voter's taking an oath that he believed in social and educational separation of the races and was "opposed to the proposed Federal so-called F. E. P. C. law." Negroes desiring to vote in the primaries were required, in addition, to present general election certificates, a requirement not exacted of white voters.

Upon adoption of the rules mentioned, this suit was instituted against officials of the Democratic Party of South Carolina to protect the right of Negro citizens to participate in the Democratic primaries; and the right with respect to the approaching primary was protected by an interlocutory injunction (Brown v. Baskin, D. C., 78 F.Supp. 933) which was made permanent on final hearing. Brown v. Baskin, D.C., 80 F.Supp. 1017. Appeal has been taken from this final decree, which enjoins defendants from refusing to enroll Negroes as members of Democratic Clubs or denying them full participation in the Democratic Party on account of race or color, from enforcing the rule requiring Negro electors to present election certificates as a prerequisite to voting unless the same requirement is applied to other persons, and from requiring the taking of the oath to which reference has been made. The appeal before us asks that we reconsider our

decision in Rice v. Elmore, supra, and attempts to defend the limitation of membership in Democratic Clubs and the oath required of voters in party primaries on the ground that these are matters for the party with which the state has no concern.

We see no reason to modify our holding in Rice v. Elmore. On the contrary, we are convinced, after further consideration, that the decision in that case was entirely correct; and little need be added to our opinion there to dispose of every question that is here presented. The gist of that decision was that primaries, under modern conditions, are a part of the election machinery of the state, and that a state cannot, by allowing a political party to take over this part of its election machinery, avoid the provisions of the Constitution forbidding racial discrimination in elections, Amend. 15, and thus deny to a part of the electorate, because of race or color, any effective voice in the government of the state. After reviewing and analyzing the applicable decisions of the Supreme Court, we summed up the rationale of our decision in the following language [165 F.2d 392]:

"An essential feature of our form of government is the right of the citizen to participate in the governmental process. The political philosophy of the Declaration of Independence is that governments derive their just powers from the consent of the governed; and the right to a voice in the selection of officers of government on the part of all citizens is important, not only as a means of insuring that government shall have the strength of popular support, but also as a means of securing to the individual citizen proper consideration of his rights by those in power. The disfranchised can never speak with the same force as those who are able to vote. The Fourteenth and Fifteenth Amendments were written into the Constitution to insure to the Negro, who had recently been liberated from slavery, the equal protection of the laws and the right to full participation in the process of government. These amendments have had the effect of creating a federal basis of citizenship and of protecting the rights of individuals and minorities from many abuses of governmental power

which were not contemplated at the time. Their primary purpose must not be lost sight of, however; and no election machinery can be upheld if its purpose or effect is to deny to the Negro, on account of his race or color, any effective voice in the government of his country or the state or community wherein he lives.

"The use of the Democratic primary in connection with the general election in South Carolina provides, as has been stated, a two step election machinery for that state; and the denial to the Negro of the right to participate in the primary denies him all effective voice in the government of his country. There can be no question that such denial amounts to a denial of the constitutional rights of the Negro; and we think it equally clear that those who participate in the denial are exercising state power to that end, since the primary is used in connection with the general election in the selection of state officers."

In the light of what was there said, there can be no question but that the injunction here was properly granted. By placing the control of the primaries in Democratic Clubs, membership in which is confined to white persons and by requiring of voters in the primaries an oath which would effectually exclude Negroes, those in control of the Democratic Party are attempting to do by indirection that which we held in Rice v. Elmore they could not do, i. e. deny to Negro voters because of race and color the right to any effective voice in the government of the state. The devices adopted showed plainly the unconstitutional purpose for which they were designed; but, even if they had appeared to be innocent, they should be enjoined if their purpose or effect is to discriminate against voters on account of race. Davis v. Schnell, D.C., 81 F.Supp. 872, affirming 69 S.Ct. 749; Yick Wo v. Hopkins, 118 U. S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220. As we said in Rice v. Elmore, supra:

"Even though the election laws of South Carolina be fair upon their face, yet if they be administered in such way as to result in persons being denied any real voice in government because of race and color, it is idle to say that the power of the state is not being used in violation of

the Constitution. As said in Yick Wo v. Hopkins, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, 'Though the law itself be fair on its face, and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as, practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.' "

In Davis v. Schnell, supra, the three judge District Court, in holding unconstitutional the Boswell amendment to the Constitution of Alabama prescribing an educational qualification for suffrage designed to disfranchise Negro voters, said [81 F.Supp. 880]:

"It, thus, clearly appears that this Amendment was intended to be, and is being used for the purpose of discriminating against applicants for the franchise on the basis of race or color. Therefore, we are necessarily brought to the conclusion that this Amendment to the Constitution of Alabama, both in its object and the manner of its administration, is unconstitutional, because it violates the Fifteenth Amendment. While it is true that there is no mention of race or color in the Boswell Amendment, this does not save it. The Fifteenth Amendment 'nullifies sophisticated as well as simple-minded modes of discrimination,' and 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by the colored race although the abstract right to vote may remain unrestricted as to race.' "

▮ The argument is made that a political party does not exercise state power but is a mere voluntary organization of citizens to which the constitutional limitations upon the powers of the state have no application. This may be true of a political party which does not undertake the performance of state functions, but not of one which is allowed by the state to take over and operate a vital part of its electoral machinery. When the organization of the party and the primary which it conducts are so used in connection with the general election that the latter merely registers and gives effect to the discrimination which they have sanctioned, such discrimination must be enjoined to safeguard the election itself from giving effect to that which the Constitution forbids. Courts of equity are neither blind nor impotent. They exercise their injunctive power to strike directly at the source of the evil which they are seeking to prevent. The evil here is racial discrimination which bars Negro voters from any effective participation in the government of their state; and when it appears that this discrimination is practiced through rules of a party which controls the primary elections, these must be enjoined just as any other practice which threatens to corrupt elections or divert them from their constitutional purpose.

▮ Appellants also ask reversal because the trial judge refused to disqualify himself from hearing the case after an affidavit charging him with bias and prejudice had been filed. The facts set forth in this affidavit, however, show no personal bias on the part of the judge against any of the defendants, but, at most, zeal for upholding the rights of Negroes under the Constitution and indignation that attempt should be made to deny them their rights. A judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence. Personal bias against a party must be shown. Berger v. United States, 255 U.S. 22, 25, 41 S.Ct. 230, 65 L.Ed. 481; Ex parte American Steel Barrel Co. 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379; Henry v. Speer, 5 Cir., 201 F. 869; Saunders v. Piggly Wiggly Corporation, D.C., 1 F.2d 582; Craven v. United States, 1 Cir., 22 F.2d 605, 607–608. As was well said in the case last cited:

" 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S.Ct. 236, 65 L.Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would

make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective."

There was no error and the decree appealed from will be affirmed.

Affirmed.