323 F.2d 54
 CONGRESS OF RACIAL EQUALITY, John Doe and Mary Doe, Appellants,
v.
Bryan CLEMMONS, Wingate White and John Christian, the latter
in his officialcapacity as Mayor-President of the
City of Baton Rouge, Louisiana, Appellees.
 No. 19703.
 United States Court of Appeals Fifth Circuit.
 Sept. 12, 1963, Rehearing Denied Oct. 18, 1963.
 
 Robert F. Collins, New Orleans, La., Carl Rachlin, New York City, Stephen C. Vladeck, New York City, Lolis Elie, Nils Douglas, New Orleans, La., Sheldon Engelhard, Charles R. Oldham, St. Louis, Mo., of counsel, for appellants.
 R. Gordon Kean, Jr., John V. Parker, John F. Ward, Jr., Baton Rouge, La., Sargent Pitcher, Dist. Atty., for appellees.
 Before TUTTLE, Chief Judge, and WISDOM and GEWIN, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 This case presents new twists in civil rights litigation. The thrust of the holding below is that the State action here was action of the Congress of Racial Equality and Negro demonstrators. The State invokes the Fourteenth Amendment against private individuals, although the Fourteenth Amendment establishes constitutional rights in favor of private individuals and against the State. Moreover, this unusual federal action is in an area that is essentially one of State responsibility-- the preservation of public order; and there is no lack of breach of peace statutes in Louisiana. The relief sought and granted in the name of the Fourteenth Amendment is a federal injunction to protect the police power of the State from private persons said to have interfered with the constitutional duty of city and parish officers to provide equal protection of the laws to all citizens. The interference consisted of a demonstration of Negro collegq students in front of the Courthous in most of the city and parish police officers. Implicit in the district court's decision is the notion that when private persons interfere with a duty imposed on a State by the Fourteenth Amendment, it becomes a matter of sufficient federal concern to justify prior restraints by federal injunction. In the circumstances, a proper regard for the federal system requires that the Court scrutinize closely the question of jurisdiction and whether on the merits the case is indeed one arising under the Constitution and laws of the United States.
 
 
 2
 This action arose out of a demonstration of Negroes in Baton Rouge, Louisiana, to protest the jailing of pickets who had urged a boycott of stores practicing racial discrimination. December 15, 1961, a large group of Negro students from Southern University, under the supervision of officers of the Congress of Racial Equality, marched from Scotlandville, Louisiana, to the Courthouse in Baton Rouge, a distance of four and a half miles. The Mayor of Baton Rouge had instructed the police office to provide necessary protection to the demonstrators as long as their activities were orderly. At times the march blocked traffic, but there was no disorder. When the march reached the Courthouse the crowd, marchers and Negro bystanders, numbered about 1500 to 2000. There were about 300 white men across the road from the demonstrators. All of the police officers on duty and sixty off-duty officers were pressed into service. The Negroes followed orders given by the Reverend B. Elton Cox, an officer of CORE. When the marchers first arrived in the downtown area, Cox and the Chief of Police conferred. Cox said that the demonstrators wanted to congregate for seven minutes at the Courthouse, where the parish prison is located; that they would say the Oath of Allegiance, sing two songs, hear a four-minute speech, and then return to Southern University. The Chief of Police told Cox that such a demonstration was permissible as long as it was orderly. The demonstration took place as planned, and without any disorder, until Cox urged the Negroes to go to lunch counters in twelve stores, demand service, and refuse to move for one hour. The trial judge found: 'It was at this moment, according to the uncontradicted testimony * * * that an outbreak of physical violence was almost a certainty'; the 'entire situation was 'tense with impending violence' and the conduct of the crowd 'was fast approaching a mob reaction." When the demonstrators refused to move, the sheriff ordered tear gas bombs to be fired into the crowd. The streets were cleared within two minutes.
 
 
 3
 Alleging an imminent threat of further demonstrations, the mayor and law enforcement officials of Baton Rouge sought injunctive relief in the federal district court. The complaint avers that CORE, its officers and agents, and John Doe and Mary Doe and others were fomenting violence and breaches of peace in the City of Baton Rouge and were encouraging a conspiracy to violate the laws of Louisiana and of the United States. The gist of the complaint is stated in the following allegation:
 
 
 4
 'The actions of these defendants and others acting in concert with them, has resulted in the obstruction and complete blockage of certain public streets and ways of the City of Baton Rouge, thereby denying and depriving plaintiffs and individual citizens of the State of Louisiana and of the United States of America of their civil rights, including the right to freely use the public streets and ways without interference and hindrance; and in addition, these acts on the part of the defendants, and others in concert wiht them, are such as to hinder plaintiffs in their official capacities as constituted authorities of the Parish of East Baton Rouge, Louisiana, and of the State of Louisiana, and of the City of Baton Rouge, louisiana, from giving or securing to all persons within said State, Parish and City the equal protection of the laws, including the equal right of all the citizens to use the public ways of the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana, in a normal, peaceful and customary manner, all of which is in violation of the provisions of Title 42, Section 1985(3) of U.S.Code Annotated.'
 
 
 5
 The plaintiffs assert jurisdiction under 29 U.S.C.A. 1332, the diversity statute, and 28 U.S.C.A. 1343, providing for jurisdiction of 'any civil action authorized by law to be commenced by any person * * * because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 * * *.'
 
 
 6
 The defendants, in their answer, admit the plaintiffs' jurisdictional allegations and, in addition, invoke jurisdiction on their own behalf under 28 U.S.C.A. 1331, the federal question statute, 42 U.S.C.A. 1983, 42 U.S.C.A. 1981 and 28 U.S.C.A. 2281. In a counterclaim, they urge that their activities were protected under the First and Fourteenth Amendments and ask that the plaintiffs be enjoined from interfering with their constitutional rights of freedom of speech and freedom of assembly.
 
 
 7
 The trial judge found that the plantiffs were entitled to injunctive relief and issued a sweeping permanent injunction restraining 'the Congress of Racial Equality, and John Doe and Mary Doe and each of them and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from * * * financing, sponsoring, encouraging or engaging in meetings or any other activities whereby violations are suggested, advocated or encouraged.'[1] The defendants appeal, urging, among other contentions, that the injunction is so broad as to abridge, by prior restraints, their freedom of speech. We do not reach that issue. We reverse the case with directions to dismiss for failure of the plaintiffs to show a federal cause of action upon which relief may be granted.
 
 I.
 
 8
 There is clearly no diversity jurisdiction, 28 U.S.C.A. 1332 stipulates that
 
 
 9
 ' The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between-- (1) citizens of different states * * *.'
 
 
 10
 In the first place, the complaint fails to allege the jurisdictional amount. The trial judge stated that the court had jurisdiction under section 1332, but he made no finding that the matter in controversy exceeded $10,000. In oral argument counsel for the appellees suggested we take judicial notice of the fact that demonstrations by 2,000 Negroes likely to result in violence would cause property damage in excess of the jurisdictional amount. Even if we should follow this suggestion, we should have to hold that the plaintiffs failed to make a sufficient showing of diversity of citizenship between the parties to support jurisdiction.
 
 
 11
 The complaint states that the defendants are 'the Congress of Racial Equality, a corporation incorporated under the laws of the State of New York, and John Doe and Mary Doe, whose exact names and addresses are unknown to the plaintiffs, but who are citizens of the United States and non-residents of the State of Louisiana.' This allegation will not support the trial court's jurisdiction. Diversity of citizenship, not of residence, is required under 28 U.S.C.A. 1332. 'Whereever jurisdiction is predicated upon the citizenship (or alienage) of the parties, it should be noted that since residence is not the equivalent of citizenship, an allegation that a party is a resident of a certain state or foreign country is not a sufficient allegation of his citizenship.' 2 Moore, Federal Practice P8.10, p. 1636 (2d Ed.). 'Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile.' Stine v. Moore, 5 Cir., 1954, 213 F.2d 446. See Neel v. Pennsylvania Company, 1895, 157 U.S. 153, 15 S.Ct. 589, 39 L.Ed. 654; Realty Holding Company v. Donaldson, 1925, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014; Texco-Cities Service Pipeline Co. v. Aetna Casualty & Surety Company, 8 Cir., 1960, 283 F.2d 144. Here, the record, far from showing that the defendants were citizens of other state, indicates that the great majority of the demonstrators covered by the injunction were citizens of Louisiana. They were college students enrolled in a Louisiana Negro university. There is no basis therefore for the district court's assuming jurisdiction under 28 U.S.C.A. 1332.
 
 II.
 
 12
 In addition to holding that there was diversity jurisdiction, the district court found that there was federal question jurisdiction under 28 U.S.C.A. 1331 and 42 U.S.C.A. 1985. Under Section 1331 district courts have 'jurisdiction of all civil actions where in the matter * * * arises under the Constitution, laws, or treaties of the United States.' The matter in controversy, however, must exceed $10,000. Since there is no allegation in the complaint as to the amount in controversy and nothing to indicate that the amount exceeds $10,000, the relevant jurisdictional statute is 28 U.S.C.A. 1343. Section 1343 has no reference to jurisdictional amount. This statute is one of the Civil Rights Acts adopted shortly after the Civil War in order to provide a federal forum for the protection of federally-granted rights under the Thirteenth, Fourteenth and Fifteenth Amendments. Subparagraphs (1) and (2) vest jurisdiction in district courts of civil actions to recover damages resulting from the conspiracies to interfere with civil rights referred to in Section 1985 of Title 42. Subparagraphs (3) and (4) allow actions in the district courts:
 
 
 13
 '(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of theUnited States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; '(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.'Section 1985(3) limits the conspiracy to one in which
 
 
 14
 'two or more persons * * * conspire * * * for the purpose of depriving * * * persons of the equal protection of the laws.' The complaint alleges: '(The defendants) are sponsoring, financing and encouraging John Doe and Mary Doe and others * * * to foment violence, to provoke breaches of the peace and other law violations, * * * and are encouraging others to conspire with them to violate the laws of the State of Louisiana and of the United States * * * depriving plaintiffs as individual citizens of the State of Louisiana and of the United States of America of their civil rights * * * (The defendants) hinder plaintiffs in their official capacities as constituted authorities of the Parish of East Baton Rouge, Louisiana, and of the State of Louisiana, and of the City of Baton Rouge, Louisiana, from giving or securing to all persons within said State, Parish and City the equal protection of the laws, including the equal right of all the citizens to use the public ways of the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana, in a normal, peaceful and customary manner, all of which is in violation of the provisions of Title 42, Section 1985(3) of U.S.Code Annotated.'
 
 
 15
 Very clearly, therefore, the plaintiffs have attempted to state a federally-granted right based on Sections 1343 and 1985(3).
 
 
 16
 A distinction must be drawn between the question of federal jurisdiction and the question of the sufficiency of the complaint (and the evidence) to show a cause of action arising under the Constitution and laws of the United States. The Supreme Court's analysis of federal question jurisdiction in Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, supports the view that the complaint in this case, as drafted, states an action created or arising under the Civil Rights statutes enacted to carry out the Fourteenth Amendment. The district court therefore had jurisdiction, even if the case should be dismissed for failure of the plaintiffs to show a cause of action under the federal statutes on which the plaintiffs rely. In Bell v. Hood the plaintiffs alleged that certain F.B.I. agents had imprisoned them and made an illegal search and seizure of their premises in contravention of the Fourth and Fifth Amendments, and they sought damages from the individuals solely on the basis of their constitutional rights. The Supreme Court stated:
 
 
 17
 'Whether or not the complaint as drafted states a common law action in trespass made actionable by state law, it is clear from the way it was drawn that petitioners seek recovery squarely on the ground that respondents violated the Fourth and Fifth Amendments. It charges that the respondents conspired to do acts prohibited by these amendments and alleges that respondents' conduct pursuant to the conspiracy resulted in damages in excess of $3,000. It cannot be doubted therefore that it was the pleaders' purpose to make violation of these constitutional provisions the basis of this suit. Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. * * * Where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit.' 327 U.S. at 681-682, 66 S.Ct. at 775-776, 90 L.Ed. 939.
 
 
 18
 Upon the remand in Bell v. Hood the district court dismissed the complaint for failure to state a claim upon which relief could be granted, 'being of the opinion that neither the Constitution nor the statutes of the United States give rise to any cause of action in favor of plaintiffs upon the facts alleged.' Bell v. Hood, S.D.Cal.1947, 71 F.Supp. 813, 820.
 
 
 19
 The holding in Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184, cert. den'd 1939, 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056 is apposite here. In that case the question was whether a conspiracy to convict the plaintiff of a crime through perjured testimony, thereby resulting in his disbarment, was 'a conspiracy for the purpose of impeding the due course of justice in an attempt to 'deny to any citizen the equal protection of the laws." The court held that since the only claim stated was one under a federal statute, the district ocurt 'had jurisdiction to decide that the plaintiff had failed to state a cause of action under that statute.' When it reached this point, the Court held that the right to practice law in a state is not a federally protected right and that no purpose to deprive the plaintiff of equal protection was shown.
 
 III.
 
 20
 Mitchell v. Greenough brings us to the question whether the plaintiffs stated and made a showing of a federally-granted cause of action. We reach the same result the Ninth Circuit reached in Mitchell v. Greenough.
 
 Section 1985(3) provides:
 
 21
 'If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws * * * (and) if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.'
 
 
 22
 A. Section 1985(3) states plainly that the conspiracies in question must be 'for the purpose of depriving' persons of Fourteenth Amendment rights. The courts have not whittled away this requirement. Thus, the Supreme Court has said that there must be 'intentional or purposeful discrimination between persons or classes'. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. 'The Act defines conspiracies of a very limited character. They must, we repeat, be 'for the purpose of depriving * * * of the equal protection of the laws, or of equal privileges and immunities under the laws'. Collins v. Hardyman, 1951, 341 U.S. 651, 660, 71 S.Ct. 937, 95 L.Ed. 1253.
 
 
 23
 There is nothing in the complaint and nothing in the record to show purpose on the part of the defendants to deprive anyone of equal protection of the laws. On the contrary, the whole object of the demonstration was to secure equal protection of the laws for all. At most, the plaintiffs alleged and proved that the defendants blocked traffic (for a short while) and that the Baton Rouge officials called a large number of police to the Courthouse, reducing police protection in other parts of the City. A similar situation exists every year at Mardi Gras. But no one would suggest that the crowds on Canal Street and the consequent reduced police protection in New Orleans give rise to actions under Section 1985(3). The Negro march and demonstration in Baton Rouge on December 15, 1961, Carnival parades in New Orleans, and St. Patrick's Day parades in New York produce similar effects. The inconvenience and even damage they may cause some citizens, because of diminished police protection, provide no basis for constructing out of thin air a purpose to deprive others of their right to equal protection of the laws. The contention has the earmarks of a bad pun.
 
 
 24
 In Collins v. Hardyman, the evidence showed that the defendants broke up the plaintiffs' meeting and did not break up meetings of others with whose sentiments they agreed. As Mr. Justice Jackson, for the Court, said:
 
 
 25
 'To be sure, this is not equal injury, but it is no more a deprivation of 'equal protection' or of 'equal privileges and immunities' than it would be for one to assault one neighbor without assaulting them all, or to libel some persons without mention of others. Such private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so. Plaintiffs' rights were certainly invaded, disregarded and lawlessly violated, but neither their rights nor their equality of rights under the law have been, or were intended to be, denied or impaired. Their rights under the laws and to protection of the laws remain untouched and equal to the rights of every other Californian, and may be vindicated in the same way and with the same effect as those of any other citizen who suffers violence at the hands of a mob.'
 
 
 26
 The instant case is stronger than Collins v. Hardyman. In both cases the defendants were private person, but in Collins v. Hardyman there was no doubt that the plaintiffs' rights were 'lawlessly violated'. Here we have a different story. Further, freedom of speech and freedom of peaceable assembly are in the balance. In both cases, however, as the Supreme Court said in Collins v. Hardyman:
 
 
 27
 'What we have here is not a conspiracy to affect in any way these plaintiffs' equality of protection by the law, or their equality of privileges and immunities under the law.'
 
 
 28
 The absence of a purpose on the part of the defendants to deprive anyone of rights to equal protection of the laws distinguishes this case from Brewer v. Hoxie School District, 8 Cir., 1956, 238 F.2d 91. In Brewer v. Hoxie, an Arkansas school district, which had desegregated, was forced to close its schools because of the activities of the defendants, who had engaged in a campaign of violence and intimidation. The school district, its directors, and superintendent obtained an injunction in the federal district court against the White Citizens Council and other organizations and individuals from continuing interference with their desegregation efforts. On appeal, the Eighth Circuit refused to order the action dismissed. In the Arkansas case the defendants made no bones about their purpose. Their avowed object was to close the Hoxie School in order to deprive the Negro children of their right, under the Equal Protection Clause, to attend a desegregated school. Here, unlike Brewer v. Hoxie, there is no allegation in the complaint and no evidence to suggest that the defendants purposefully deprived others of their right to equal protection of the laws.
 
 
 29
 B. The plaintiffs' case is fatally defective for another reason: they were deprived of no federal rights. Blocked traffic inconvenienced some citizens. Diminished police protection was a hazard to some citizens. But this does mean that the rights adversely affected were federal rights.
 
 
 30
 In Miles v. Armstrong, 7 Cir., 1953, 207 F.2d 284, the Court held that an aggravated assault upon the plaintiff and the wanton destruction of his property did not affect the privileges and immunities incident to United States Citizenship. The Court stated:
 
 
 31
 'To be valid the act must be held to apply only to deprivation of federal rights. If it be so construed as to include deprivation of purely state rights, it would not seem to be within the Constitution.'
 
 
 32
 Love v. Chandler, 8 Cir., 1942, 124 F.2d 785 was a suit for damages against Federal and State officials and private persons for conspiracy to prevent the plaintiff from obtaining employment with the Works Progress Administration. The court dismissed the action on the ground that the right to employment was not a federally created right. In Ferrer v. Fronton Exhibition Co., 5 Cir., 1951, 188 F.2d 954, this Court dismissed a suit charging conspiracy to import alien contract labor, contrary to a federal statute, thereby depriving plaintiff of employment, on the ground that there was no federal right involved. Downie v. Powers, 10 Cir., 1951, 193 F.2d 760, is closely analogous to the instant case. The plaintiff sued city officials and individuals alleging that the defendants, private persons, had broken up a meeting of Jehovah's Witnesses by violence and that the city officials had failed to protect the plaintiffs against such action. The trial court instructed the jury that Section 1985(3) required proof of a conspiracy involving the city officials. The Court of Appeals upheld the instructions but reversed for other errors.
 
 
 33
 If the defendants impaired any right of the plaintiffs, it was the right to police protection. This right is derived from the State, not the Federal Government. Private citizens deprived of such a right by other private citizens have not been deprived of a federally-granted right, giving rise to an action based on the Constitution and laws of United States.
 
 
 34
 We do not consider the constitutional question whether Congress would have the power to enact a statute to prohibit conspiracies having the purpose of depriving citizens of rights arising under state laws. We point out, however, as the Supreme Court did in Collins v. Hardyman, that to construe Section 1985(3) as applicable to state-granted rights would raise a serious constitutional question.
 
 
 35
 C. A third fatal weakness in the plaintiffs' case is that the defendants are private persons. It is still the law that the Fourteenth Amendment and the statutes enacted pursuant to it, including 42 U.S.C.A. 1985, apply only when there is state action. Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; United States v. Harris, 1883, 109 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290. As the Court said in the Civil Rights Cases:
 
 
 36
 'It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment. It has a deeper and broader scope. It nullifies and makes void all State legislation, and State action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws.' Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835.
 
 
 37
 The Supreme Court recently reasserted this restriction upon the scope of the Fourteenth Amendment in Peterson v. City of Greenville, 1963, 373 U.S. 244, 247, 83 S.Ct. 1119, 10 L.Ed.2d 323.
 
 
 38
 There are two major exceptions to this principle. As pointed out in Collins v. Hardyman, one exception is a massive conspiracy such as the Klan in Reconstruction days, 'so far-flung and embracing such members * * * (as) to deprive Negroes of their legal rights and to close all avenues of redress or vindication'. 341 U.S. at 662, 71 S.Ct. at 942, 95 L.Ed. 1253. The other exception applies when private persons take over governmental functions. Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; Rice v. Elmore, 4 Cir., 1947, 165 F.2d 387, cert. den'd 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Baskin v. Brown, 4 Cir., 1949, 174 F.2d 391; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265. Neither exception applies to the case before us.
 
 
 39
 The plaintiffs, relying on Brewer v. Hoxie School District, 8 Cir., 1956, 238 F.2d 91, argue: the law enforcement officials of Baton Rouge have a constitutionally imposed duty to accord equal protection of the law to all persons; the defendants interfered with the officials' performance of that duty, causing the local officials to deprive others of equal law enforcement; this constituted state As we have pointed out, Brewer v. Hoxie is distinguishable because of the purposeful deprivation of civil rights. That case bears only a superficial resemblance to the instant case. The action enjoined in Brewer v. Hoxie was one step removed from action by state officials; the action sought to be reached here cannot possibly be contorted into state action. In any event the Supreme Court has spoken expressly in Collins v. Hardyman: the Civil Rights Acts apply only to state action.
 
 
 40
 In sum, (1) the plaintiffs have failed to state or to show that the defendants conspired purposefully to deprive others of equal protection of the laws, as required by Section 1985(3); (2) there is no federal right in the city officials, individually or on behalf of the Baton Rouge citizenry, to be protected in the performance of their municipal duties, as 28 U.S.C.A. 1331 requires of an action arising under the Constitution and laws of the United States; and (3) there is no state action here such as is necessary to support a suit invoking the Fourteenth Amendment and statutes enacted to enforce that amendment.
 
 
 41
 Since there is neither diversity of jurisdiction nor a federal claim, the action is reversed and remanded with directions to the district court to dissolve the injunction and to dismiss the complaint forthwith.[2]
 
 
 42
 GEWIN, Circuit Judge (concurring specially).
 
 
 43
 I concur in the result reached. In my opinion neither the complaint nor the proof sustain federal jurisdiction. If the principles affirmed in Brewer et al. v. Hoxie School Board District, etc. et al., 8 Cir., 1956, 238 F.2d 91, could be sustained when measured by Collins et al. v. Hardyman et al., 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253, it is my opinion that federal jurisdiction could not be sustained under the Brewer case. On the question of diversity the instant case is clearly distinguishable from our recent case of Congress of Racial Equality et al. v. Douglas, 5 Cir., 1963, 318 F.2d 95, wherein it was held:
 
 
 44
 'Jurisdiction was vested in the district court by way of 28 U.S.C. 1332, diversity of citizenship, the Congress of Racial Equality being incorporated in the state of New York, and all plaintiffs being citizens of the state of Mississippi.'
 
 
 45
 I would emphasize the statement contained in the opinion of the majority, 'moreover, this unusual federal action is in an area that is essentially one of State responsibility-- the preservation of public order; * * *', but I would not limit the State to breach of peace statutes in the choice and enforcement of a remedy. The circumstances revealed by the record in this case may authorize action under statutes other than 'breach of peace statutes'. As stated in Collins v. Hardyman, '(Louisiana) courts are open to plaintiffs and its laws offer redress for their injury and vindication for their rights.'
 
 
 46
 In my judgment, the record does not support the statement in the majority opinion that '* * * the whole object of the demonstration was to secure equal protection of the laws for all.' More than a mere demonstration took place. In the circumstances here present, municipal officials, police officers and others charged with the preservation of law and order must have the assistance of the courts, and this case is an example where state court action is highly appropriate. Once State Court jurisdiction has been invoked, Federal Courts should abstain from taking action, even if Federally protected rights become involved ultimately. Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424.
 
 
 
 [1]
 The judgment provides, in pertinent part:
 'ORDERED, ADJUDGED AND DECREED that the preliminary injunction heretofore granted and issued by this Court herein on the 4th day of January, 1962, and entered in the office of the Clerk of this Court on the 4th day of January, 1962, be and the same hereby is made perpetual and permanent to the extent set forth below, and that the defendant corporation, Congress of Racial Equality and John Doe and Mary Doe and each of them and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, be permanently and perpetually enjoined and restrained from financing, sponsoring, encouraging, or engaging in meetings or any other activities whereby violations of existing State or Federal laws are suggested, advocated, or encouraged; from financing, sponsoring, encouraging, or engaging in meetings whereby the public ways, streets, sidewalks, or highways, of the City of Baton Rouge, or the Parish of East Baton Rouge, are blocked, or the unimpaired use thereof denied to other traffic; from financing, sponsoring, encouraging, or engaging in meetings or any other activities wherein or whereby disobedience to the lawful orders of properly constituted law enforcing agencies and their personnel is advocated, suggested or encouraged; from financing, sponsoring, encouraging, or engaging in meetings or any other activities designed or held for the purpose of impeding or obstructing the administration of justice or the orderly functions of government; and from financing, sponsoring, or encouraging, or engaging in any activities designed to, or which do, impede, hinder, or obstruct officers of the law, or officials of the Parish of East Baton Rouge, or the City of Baton Rouge, from performing and discharging the duties of their respective offices.' (Record, pp. 365, 366)
 
 
 [2]
 In Kelley v. Page, No. , of the Docket of this Court, City Officials of Albany obtained an 'injunctive order', similar to the order in the instant case, against M.S. Page, Dr. W. G. Anderson, Slater King, Charles Jones, Reverend Martin Luther King, Jr., Reverend Ralph Abernathy, Reverend Wyatt Tee Walker, Mrs. Ruby Hurley, Congress of Racial Equality, Southern Christian Leadership Conference, Student Non-Violence Coordinating Committee, The National Association For The Advancement Of Colored People, and the Albany movement and other persons whose names are unknown and who are acting in concert with them. On motion of the defendants, the Honorable Elbert P. Tuttle, Chief Judge, set aside the order as 'null and void'. Judge Tuttle's order states: 'On the merits of the motion the defendants contend that the complaint filed in the District Court asserts federal jurisdiction only under the several Civil Rights Acts, which in turn are based upon Section 1 of the Fourteenth Amendment to the Constitution of the United States. This is conceded by the plaintiffs. P It being clear that the Supreme Court of the United States has held that the Civil Rights Acts do not encompass actions of the kind described in the complaint, see Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 and Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, I am convinced that the trial court was without jurisdiction to entertain this suit. This being so, I am of the opinion that the injunctive order was null and void.' In Congress of Racial Equality v. Douglas, 5 Cir., 1963, 318 F.2d 95, in which the district court enjoined CORE and certain private persons on the suit of the City of McComb, mississippi, the Court did not find it necessary to discuss jurisdiction