**C. A. GRIFFON, Jr., Dennis Songy, Charles P. Schnebelen and Edward T. Supple**

v.

**CONGRESS OF RACIAL EQUALITY, John Doe and Mary Doe.**

Misc. No. 690.

United States District Court E. D. Louisiana, Baton Rouge Division.

Sept. 6, 1963.

Stay Order Memorandum, Sept. 20, 1963.

Samuel C. Cashio, Dist. Atty., 18th Judicial Dist., Maringouin, La., Charles H. Dameron, Asst. Dist. Atty., 18th Judicial Dist., Port Allen, La., Paul G. Borron, Jr., Edward N. Engolio, Plaquemine, La., for plaintiffs.

Robert F. Collins, Nils R. Douglas, Lolis E. Elie, New Orleans, La., Murphy W. Bell, Baton Rouge, La., Beverly Axelrod, San Francisco, Cal., Eric Rosenfeld, Carl Rachlin, New York City, F. B. McKissick, Durham, N. C., for respondents.

WEST, District Judge.

This matter is before the Court on the motion of respondents, Congress of Racial Equality, to dissolve the temporary restraining order issued herein on September 1, 1963. The temporary restraining order was issued because, in the considered opinion of this Court, the sworn affidavits and the verified complaint filed herein showed, to the satisfaction of this Court, that unless a temporary restraining order was issued immediately, irreparable injury, loss and damage would result to applicants before a hearing could be held thereon. I further felt that such a restraining order was necessary in order to preserve law and order in the Town of Plaquemine, Louisiana, pending the hearing on a request for the issuance of a preliminary injunction.

A prior temporary restraining order had been issued by me on August 21, 1963, and had been set aside on August 29, 1963 by the Fifth Circuit Court of

Appeals because of the fact that due to the temporary absence of the Trial Judge from the State, the defendant, Congress of Racial Equality, had apparently been unable to obtain a hearing on its motion to dissolve as provided for under Rule 65(b) of the Federal Rules of Civil Procedure. Consequently, upon application of petitioners, the temporary restraining order of September 1, 1963, was issued by me, specifically reserving to respondents the right to apply for and to have an immediate hearing on a motion to dissolve, should they see fit to file one, all pursuant to the provisions of Rule 65(b). Such a motion was filed on the afternoon of September 3, 1963, and this hearing resulted.

I have given much thought to this matter, and have carefully considered and weighed the argument of counsel for both sides. These are difficult cases; these are difficult times. We simply cannot lose sight of the overall principles involved in these civil rights matters. This temporary restraining order was issued by me because, in my considered opinion, and in the exercise of the discretion vested in me, I sincerely felt that it was absolutely necessary that such an order issue to preserve the status quo until such time as a hearing could be held on the application for the issuance of a preliminary injunction, and subsequently a permanent injunction.

As stated by Judge John Minor Wisdom, the author of the majority opinion in McCain v. Davis, D.C., 217 F.Supp. 661, at page 666, "What all Louisianians know, this Court knows." Under that theory, I believe that I can take judicial cognizance of the live pictures on television, and of the radio broadcasts, which, together with the sworn affidavits and verified pleadings filed herein, left no doubt in my mind whatsoever that a temporary restraining order was necessary in order to prevent violence and possible bloodshed in the Town of Plaquemine.

Now, the restraining order which I issued in this case has been referred to as "a sweeping restraining order"; it has been so characterized by defendants and by certain other news media. A reading of this restraining order will reveal that it is not at all "sweeping" in nature. It is actually restrictive in nature, and carefully designed to enjoin only such unlawful activities as are designed to deliberately violate existing law. It does not, in any way, prevent or enjoin defendants from peaceably assembling, from freely speaking or from freely writing, as long as those activities are engaged in in a lawful manner and with due regard to existing law and with due regard to the constitutionally guaranteed rights of others.

The right to petition for redress of grievance is, of course, protected by the First Amendment to the United States Constitution. But just as the right to freedom of speech and freedom of the press is not absolute and unencumbered by corresponding duties, neither is the right to assemble or the right to petition for the redress of grievance so absolute as to allow their exercise with complete disregard for the constitutionally guaranteed rights of others.

To peaceably assemble is one thing—to confiscate, for one's own individual use, to the exclusion of all others, the streets, sidewalks, and ways of a town is another. To petition for redress of grievance is one thing—to intimidate, to threaten, to take over, if you will, by unlawfully occupying another's home or place of business by completely blocking the means of ingress or egress thereto, is quite another.

It should be clearly understood, once and for all, by all parties to this suit and by all parties to other suits of a similar nature, that this Court will not be intimidated by anyone, regardless of race or color, nor will this Court be in any way influenced by mass demonstrations here or elsewhere. Anyone, be he white or colored, who takes it upon himself to violate the orders of this Court will be dealt with as harshly as the law permits. It is the function of this Court to protect, as far as possible, the constitutionally guaranteed rights of all people, and not just a favored few. I intend to perform that

function by the issuance of such orders as I deem necessary and proper. The rights guaranteed by the First Amendment, particularly the right to peaceably assemble, the right of freedom of speech, the right of freedom of the press, and the right to petition for redress of grievance will always be respected and protected by this Court. That right belongs to *everyone*, white and colored alike.

The right to disobey existing law, however, to confiscate and misuse the property of another, to intimidate, threaten and abuse others and to frustrate and prevent public officials from performing the duties of their office other than by appropriate judicial proceedings, shall always be denied by this Court. In the performance of these functions, the temporary restraining order complained of was issued by this Court. The temporary restraining order issued herein prohibits only the unlawful acts which I have just referred to and nothing else. To dissolve it would be to say, in effect, that you are hereby given specific license to violate the law and that the constitutionally guaranteed rights of others are nonexistent.

This restraining order simply states this: CORE and people acting in concert with them are "hereby enjoined from financing, sponsoring, encouraging, or engaging in meetings or any other activities whereby violations of existing state, municipal or federal laws are suggested, advocated or encouraged." To set that aside at this time would, in effect, say that you are hereby licensed to violate existing state, municipal and federal laws.

The second section of the restraining order says that respondents are restrained from "financing, sponsoring, encouraging or engaging in meetings, demonstrations or other activities whereby the public ways, streets, sidewalks or highways of the City of Plaquemine, or of the Parish of Iberville, Louisiana, are blocked, or the unimpaired use thereof denied to other traffic lawfully attempting to use the same." To set that aside would simply say that you are now specifically licensed to block the streets, sidewalks, and highways of the Town of Plaquemine, and the Parish of Iberville, and that you are hereby licensed to deny the unimpaired use of those facilities to other traffic lawfully attempting to use the same.

The restraining order further says that respondents are restrained from "financing, sponsoring, encouraging or engaging in meetings or other activities wherein or whereby disobedience of the lawful orders of properly constituted law enforcing agencies and their personnel is advocated, suggested or encouraged." To set that aside would simply say that you are now licensed to disobey the lawful orders of the properly constituted authorities in the performance of their duties.

The next section of the restraining order says that you are restrained from "financing, sponsoring, encouraging or engaging in meetings or any other activities designed or held for the purpose of impeding or obstructing the administration of justice or the orderly functions of government." To set that aside would be to say that you are hereby given license to impede and obstruct the administration of justice and to impede and obstruct the orderly functions of government.

And lastly, the restraining order restrains and enjoins these defendants from "engaging in any activity designed to or which does impede, hinder or obstruct officers of the law or officials of the Parish of Iberville, Louisiana, or the Town of Plaquemine, Louisiana, from performing and discharging the duties of their respective offices." To set that aside would be in effect to say that you are hereby given license to impede, hinder and obstruct the officers and officials of Iberville Parish, and of the Town of Plaquemine, from performing and discharging the duties of their respective offices.

Those are the provisions of the restraining order. I cannot by any stretch of the imagination consider the restraining order so sweeping in nature as to in any way deprive the members of

CORE or people acting in concert with them from exercising any of their constitutionally guaranteed rights.

The orderly function of government requires and demands that all laws be obeyed by all people until such time as they are either repealed, or, by proper judicial process, declared to be invalid. The restraining order issued herein is not intended, in any way, to deprive anyone of the sacred rights guaranteed *to all people* by the Constitution and Laws of the United States of America, and in my humble opinion, it just simply does not do so.

The right to peaceably assemble is sacred; the right to petition for redress of grievance is sacred; the right to freedom of speech, freedom of the press, and freedom of religion, and all other rights guaranteed by the Constitution of the United States of America and the Amendments thereto are sacred rights not to be lightly set aside or infringed upon. The restraining order here under consideration in no way interferes with those rights.

It should require no restraining order —it should require no injunction to remind a person that he cannot disobey the law and that he cannot invade private property, take over private business, or unduly invade and intrude upon the privacy of others. It goes without saying that our system of government has very carefully provided the machinery, which is available to everyone, as is being witnessed here today, with which to petition, by use of proper judicial process, for the redress of grievance brought about by laws thought to be unconstitutional or otherwise invalid. That is the procedure which must be followed if any semblance of law and order is to be preserved.

It is my opinion that no damage of any kind can possibly result to the defendants or to any other persons between now and Monday, September 9, 1963, by allowing this restraining order which I have just analyzed in detail to remain in effect pending the hearing on the plaintiffs' petition for the issuance of a preliminary injunction.

This hearing today concerns only the question of whether or not the restraining order issued on September 1, 1963, and temporary in nature, should be dissolved. The hearing set for Monday is an evidentiary hearing, to be held for the purpose of deciding whether or not an injunction should issue. The Court will be prepared on that day to hear any and all evidence pertaining to that question. On the basis of the pleadings and affidavits presented to this Court on September 1, 1963, by the plaintiffs, there could be no doubt in anyone's mind—either mine or yours—that a temporary restraining order was not only called for but was an urgent necessity. Nothing has occurred in the meantime to lessen the need for restraint now. But I reiterate that an analysis of the temporary restraining order really makes it almost an absurdity to have had to issue it. It is so completely restrictive in nature as to merely tell respondents that flagrant and deliberate violation of the law will not be tolerated.

If assemblies, meetings or parades are held with due regard to the law and the rights of other people—if they are held without intentionally violating the constitutionally guaranteed rights of others, then the right to so assemble, meet or parade is certainly a right guaranteed by the Constitution of the United States of America. But there is a tremendous difference, in my opinion, between peaceful assemblies and peaceful petitioning for redress of grievance and a mob demonstration which is specifically designed to deprive other people of the right to the peaceful possession and use of their property—to wake them up in the middle of the night—to deliberately create disturbances all night long for the express purpose of keeping them from enjoying the sleep and rest to which they are entitled—and to prevent officers of the law from carrying out the duties which they, by law, are sworn to perform. Based upon the sworn affidavits and the

verified pleadings, this Court concluded that the latter type activities were in progress when the temporary restraining order was issued on September 1, 1963. These activities have now ceased pursuant to the mandate of the restraining order.

For the reasons herein set forth, the motion to dissolve the temporary restraining order will be denied.

## STAY ORDER MEMORANDUM

This case arises out of racial demonstrations which occurred in the Town of Plaquemine, Louisiana, between August 15, 1963 and September 3, 1963. On August 21, 1963, plaintiffs, all public officials of either the Town of Plaquemine, Louisiana, or the Parish of Iberville, Louisiana, filed a complaint in which they prayed for the issuance of a temporary restraining order, and ultimately an injunction, restraining and enjoining the members of the Congress of Racial Equality, and those acting in concert with them, from violating certain state and federal laws, which violations, they alleged, deprived the citizens of the Town of Plaquemine, Louisiana, of certain constitutionally guaranteed rights. In addition to alleging the violation of various state statutes, plaintiffs alleged specifically the violation by defendants of 42 U.S.C.A. § 1985, and 15 U.S.C.A. § 1 et seq. The Court, being of the opinion that immediate irreparable damage was about to occur to both persons and property, issued a temporary restraining order on August 21, 1963, restraining defendants from engaging in certain enumerated activities, and also ordered that an evidentiary hearing be set for September 9, 1963, on the question of whether or not an injunction should issue herein.

Thereafter, on August 24, 1963, defendants filed a motion to dissolve the temporary restraining order, which motion was denied by Honorable Herbert W. Christenberry on August 26, 1963. Defendants then appealed this ruling to the United States Court of Appeals, Fifth Circuit, alleging that they had not been given a hearing on their motion to dissolve. Apparently, acting under the erroneous assumption that the order issued by this Court on August 21, 1963, was a preliminary injunction rather than a temporary restraining order, the Court of Appeals accepted jurisdiction over the appeal and, treating the order of August 21, 1963, as a preliminary injunction rather than as a temporary restraining order, issued, on August 29, 1963, a stay order, staying the operation of this Court's order of August 21, 1963, until such time as defendants could obtain a hearing on their motion to dissolve. Actually, the temporary restraining order of August 21, 1963, would have expired by operation of law at 5:30 o'clock p. m. on August 31, 1963, whether a stay order had been issued or not. On September 1, 1963, plaintiffs again petitioned this Court for the issuance of another temporary restraining order. Upon the showing made by plaintiffs to this Court, it was my considered opinion that the issuance of a temporary restraining order was essential and absolutely necessary if any semblance of law and order were to be preserved in the Town of Plaquemine, Louisiana, pending a hearing on plaintiffs' petition for the issuance of a preliminary injunction, which hearing was set for September 9, 1963. Consequently, a temporary restraining order, identical to the one issued on August 21, 1963, was issued by me on September 1, 1963, accompanied by written reasons therefor. Immediately thereafter defendants filed a motion to dissolve. This motion was heard on September 6, 1963, and for the reasons assigned and filed of record herein, the motion to dissolve was denied. Thereafter, on September 9, 1963, a full evidentiary hearing was held on petitioners' request for the issuance of a preliminary injunction, after which the matter was taken under advisement. Counsel for both sides were then given until September 16, 1963, to file briefs, and the Court indicated that a ruling hereon would be made by September 20, 1963. However, the Court has now been advised that on September 19, 1963, a

suit similar to this one, and involving essentially the same issues, has been filed by the officials of the Town of Plaquemine, Louisiana, and/or the Parish of Iberville, Louisiana, against the same defendants, in the Eighteenth Judicial District Court in and for the Parish of Iberville, State of Louisiana, and that the Judge of that Court has, at the request of the plaintiffs, issued a temporary restraining order therein. Thus, essentially the same issues as were presented to this Court by the instant suit are now before a Louisiana State Court of competent jurisdiction. In the case of Congress of Racial Equality, et al. v. Bryan Clemmons, et al., United States Court of Appeals, Fifth Circuit (1963), 323 F.2d 54, wherein a factual situation different from the present suit was involved, but wherein the ultimate issues involved were very similar, Judge Wisdom, the author of the majority opinion, stated:

"Moreover, this unusual federal action is in an area that is essentially one of State responsibility—the preservation of public order;"

Also, Judge Gewin, in his concurring opinion, stated:

"In the circumstances here present, municipal officials, police officers and others charged with the preservation of law and order must have the assistance of the courts, and this case is an example where state court action is highly appropriate. Once State Court jurisdiction has been invoked, Federal Courts should abstain from taking action, even if Federally protected rights become involved ultimately. Burford v. Sun Oil Company, 319 U.S. 315, 87 L.Ed. 1424."

■ While in no way agreeing with the majority opinion in the Clemmons case, supra, wherein it describes the ac-

tion by this Court therein as "unusual federal action", and while in no way meaning to imply that this Court concludes or even suggests that the holding on the merits in the Clemmons case is in any way controlling insofar as a determination of the present case is concerned, nevertheless, this Court does agree with the expressions contained in both the majority opinion and the concurring opinion, as quoted above, to the effect that since state court jurisdiction over this dispute has now been invoked, this Court should abstain from further action herein pending a determination of the matter, if possible, by the proper state courts of Louisiana. A stay order will therefore be issued herein accordingly.

However, in view of the fact that this Court has determined that it does have jurisdiction over this case, and that such determination is not contrary to the findings of the majority of the Court of Appeals in the Clemmons case, jurisdiction over this case will be retained in order that further proceedings might ultimately be had herein, if necessary, and in order that such further orders and decrees may be entered herein as may, from time to time be deemed necessary and proper. The temporary restraining order issued herein on September 1, 1963, and which, by stipulation of the parties and with the approval of the Court, was to remain in effect through September 20, 1963, will now be dissolved and set aside in deference to the restraining order issued by the state court, and this Court will now withhold its ruling on the application for the issuance of a preliminary injunction for the reasons herein set forth. By the application of the doctrine of abstention, all further proceedings in this case will, by appropriate order to be entered herein, be stayed until further order of this Court.