Ronald B. BARON, Plaintiff,

v.

Georgia S. CARSON, Individually and as President of the North Shore Mental Health Association and member of the Executive Committee thereof, et al., Defendants.

No. 76 C 16.

United States District Court, N. D. Illinois, E. D.

March 31, 1976.

Albert Brooks Friedman, Chicago, Ill., for plaintiff.

Stuart Bernstein, Susan S. Sher, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

*Motion to Dismiss*

### I.

Plaintiff, Dr. Ronald B. Baron, formerly a staff psychiatrist with the North

Shore Mental Health Association ("Association"), brought this action pursuant to 42 U.S.C. §§ 1983 and 1985(1), and invoking this Court's jurisdiction under 28 U.S.C. § 1343, against the President, Medical Director and Executive Committee of the Association, seeking injunctive and monetary relief for the allegedly improper termination of plaintiff from the Association's staff. Pending before us is defendants' motion to dismiss pursuant to Rule 12(b) F.R.Civ.P. for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

From the pleadings filed to date it appears that the Association is a private not-for-profit Illinois corporation, with over half of its financial support coming from federal and state sources. The Association was organized to provide psychiatric and related services for mentally ill residents of northern Cook and southern Lake Counties, Illinois, and maintains a professional staff to service its clinic in Northfield, Illinois.

During the time that plaintiff was a member of the Association's staff, he was also an appointed member of the Lake County Board of Health ("Board"), the governing body of the Lake County Health Department. Among the duties of the Board is supervision over the extension of health care services to residents in Lake County, and the appropriation of County funds for mental health units within the County.

In July 1975, the Association submitted a proposal to the Board requesting the appropriation of Lake County funds to the Association in exchange for the provision of mental health services by the Association to residents of Lake County. The proposal specified that the appropriation from the Board would be used by the Association to establish a branch facility in the southeast portion of Lake County designed to service Lake County residents exclusively.

## II.

Count I of the complaint alleges that upon learning of plaintiff's opposition to the Association's proposal to the Board, defendants entered into a conspiracy designed to interfere with plaintiff's functions and duties as a member of the Board, in violation of 42 U.S.C. § 1985(1). In furtherance of the alleged conspiracy plaintiff asserts that defendants instructed him not to participate in the Board vote on the Association proposal; threatened to and actually did terminate plaintiff's employment with the Association; and injured plaintiff's professional reputation through a false statement circulated to the Association's staff outlining the alleged grounds for the termination of plaintiff.

Defendants contend that regardless of the merits of plaintiff's assertions, Count I should be dismissed for lack of subject matter jurisdiction since 42 U.S.C. § 1985(1) relates only to conspiracies to interfere with duties of a United States officer, and that plaintiff, as a member of a County Board, does not fall within the purview of the statute. We agree.

42 U.S.C. § 1985 provides in pertinent part:

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

\* \* \* \* \* \*

(3) . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

On its face, § 1985(1) relates solely to federal officers and federal office holders. The dearth of reported case law on this specific issue appears to be no more than a reflection on the clarity of the statutory language, and the inapplicability of § 1985(1) to anyone but federal officers. Those few courts which have dealt specifically with the question of proper plaintiffs under subsection (1) have done so in passing, noting only the obvious limitations of the statute's applicability. *See, e. g., Veres v. County of Monroe,* 364 F.Supp. 1327, 1329 (E.D. Mich.1973); *McIntosh v. Garofalo,* 367 F.Supp. 501, 505 n. 4 (W.D.Pa.1973); *Carraway v. Jefferson Parish School Board,* 251 F.Supp. 462, 463 (E.D.La. 1966).

The only case to which plaintiff points in support of his contention for coverage of state officials under § 1985(1) is *Griffon v. Congress of Racial Equality,* 221 F.Supp. 899 (E.D.La.1963), which, as noted by defendants, has been repudiated on that issue by the Fifth Circuit in *Congress of Racial Equality v. Clemmons,* 323 F.2d 54, 63 (5th Cir. 1963).

We therefore hold that plaintiff's status as a county official is not protected within the meaning of § 1985(1), and accordingly dismiss Count I of the complaint for lack of subject matter jurisdiction.

### III.

In Count II of his complaint plaintiff contends that his due process rights were violated when he was terminated from the Association's staff without the benefit of prior notice, a statement of the charge against him and a hearing. Plaintiff asserts this Court's jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, on the grounds that the Association's clinic "was the only mental health service in the North Shore receiving referrals from State of Illinois mental hospitals for out-patient care," and that "in excess of one-half of [the Association's] budget is funded by governmental sources," thereby rendering the Association's activities state action. Count II, ¶ 12.

42 U.S.C. § 1983 provides in pertinent part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . in an action at law, suit in equity, or other proper proceeding for redress.

The two crucial elements which must be proved under the statute in order for a plaintiff to recover are (1) a deprivation of a constitutional right by the defendant, and (2) that the defendant acted under color of state law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Where the defendant's action is wholly private, however, jurisdiction under § 1983 falls.

Though we recognize that "conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to be subject to the constitutional limitations placed upon state action," *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), the Supreme Court has cautioned in *Moose Lodge v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627, 637 (1972), that:

> While the principle is easily stated, the question of whether particular . . . conduct is private, on the one hand, or amounts to 'State action,' on the other hand, frequently admits of no easy answer.

Rather, it is "[o]nly by sifting facts and weighing circumstances [that] the nonobvious involvement of the State in private conduct [can] be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45, 50 (1961).

Generally, questions of "state action" arise when the state has somehow

involved itself in the activity under scrutiny or when a private entity has assumed a state or public function. Plaintiff asserts that state action is present in the instant action through both state involvement and the assumption of a public function by a private entity. Our review of the facts in this case and the relevant case law discloses, however, that under neither approach do the circumstances herein merit the imposition of constitutional restrictions upon the Association.

As noted above, the sole grounds for a finding of state action asserted by plaintiff in his complaint relate to the Association's receipt of governmental funds and that the Association is the only entity in the North Shore receiving referrals from State of Illinois mental hospitals for out-patient care. One further ground is alleged generally in plaintiff's Memorandum In Opposition at p. 11 regarding "regulations" which attach to the receipt of state and federal funds by the Association. In support of his argument that state action is present under these facts, plaintiff relies on *Holmes v. Silver Cross Hospital of Joliet, Illinois,* 340 F.Supp. 125 (N.D.Ill.1972).

The *Holmes* opinion, however, was authored by Judge Will of this Court, who, in a more recent opinion noted the "emerging decisional law running *contra* to *Holmes,* and seriously eroding its precedental effect." *Doyle v. Unicare Health Serv., Inc., Aurora Center,* 399 F.Supp. 69, 73 (N.D.Ill.1975). Judge Will went on to observe:

> As recently set forth by the Supreme Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), on the question of § 1983's coverage of a public utility, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. *Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. 163 at 176–177, 92 S.Ct. 1965 at 1973, 32 L.Ed.2d 627. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so." Consistent with this ruling and pertinent to the instant suit, numerous cases have held that being subject to state regulation and receiving Hill-Burton funds, do not convert an otherwise private hospital into one acting under color of state law. *Ward v. St. Anthony Hosp.,* 476 F.2d 671 (10th Cir. 1973); *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502 (6th Cir. 1973); *Barrio v. McDonough District Hosp.,* 377 F.Supp. 317 (S.D.Ill.1974); *Mulvihill v. Julia L. Butterfield Memorial Hosp.,* 329 F.Supp. 1020 (S.D.N.Y.1971); *Barrett v. United Hosp.,* 376 F.Supp. 791 (S.D.N.Y.1974); *Slavcoff v. Harrisburg Polyclinic Hosp.,* 375 F.Supp. 999 (M.D. Pa.1974). Nor does a hospital lose its private character because it receives funds from the State for the care of indigent patients, *Shulman v. Washington Hospital Center,* 222 F.Supp. 59 (D.D.C.1963); *Halbertstadt v. Kissane,* 31 A.D.2d 568, 294 N.Y.S. 841 (1968); *West Coast Hospital Ass'n v. Hoare,* 64 So.2d 293 (Fla.1953), . . . or other governmental financial assistance, *Mauer v. Highland Park Hosp. Foundation,* 90 Ill.App.2d 409, 232 N.E.2d 776 (1967).

Thus, standing alone, the fact that the Association receives governmental funds and may be subject to state regulation does not make its activities into those of the state for purposes of § 1983. Nor does the fact that the Association is the sole entity in the North Shore receiving referrals from State mental health hospitals for out-patient care convert its activities into those of the state. *See e. g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 354, 95 S.Ct. 449, 454, 42 L.Ed.2d 477, 483 (1974).

Rather, as articulated by Judge Friendly in *Powe v. Miles,* 407 F.2d 73, 81 (2nd Cir. 1968): "the state must be involved not simply with *some* activity of the institution alleged to have inflicted injury on a plaintiff but with *the* activity that caused the injury. Putting

the point another way, the state action, not the private action, must be the subject of the complaint." (emphasis added). *See also, e. g., Robinson v. Davis,* 447 F.2d 753 (4th Cir. 1971); *Blackburn v. Fisk University,* 443 F.2d 121 (6th Cir. 1971). This requirement of at least a degree of joint participation by the state in the challenged conduct has been further explained by the Supreme Court in *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 351, 95 S.Ct. at 453, 42 L.Ed.2d at 484:

> The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*See also, Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir. 1973); *Slavcoff v. Harrisburg Polyclinic Hosp.,* 375 F.Supp. 999, 1001 (M.D.Pa.1974).

In the case at bar, though plaintiff has alleged that the Association receives a great deal of government funding; has pointed to possible "public function" aspects of the Association's activities; and may even have alleged some degree of governmental regulation of the Association's general operation, we find that plaintiff has failed to show or allege the requisite involvement by the state in the allegedly wrongful conduct he has challenged. Since Count II lacks the essential allegation of state action reflected in the relevant case law, plaintiff's claim is not actionable under § 1983 and must be dismissed.

We note in closing, however, that though both Counts I and II must be dismissed for lack of federal jurisdiction plaintiff is not foreclosed from seeking appropriate relief in the Illinois State Courts. The motion to dismiss is sustained and the complaint is dismissed.